## LARSON et al. v. FIRST STATE BANK OF VIENNA, S. D., et al.

### In re EGGEN.

Circuit Court of Appeals, Eighth Circuit. October 5, 1927.

### No. 7785.

1. **Bankruptcy** ⊂⇒11—Bankruptcy courts and referees are courts of equity, and their decisions are governed by principles of equity.

A court of bankruptcy is a court of equity, and its judge and referees, in adjudging the rights of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence.

2. **Equity** ⊂⇒66—Court may condition equitable relief granted to complainant with enforcement of opposing equities of defendant, though barred by limitation.

A chancellor or court of equity may condition the grant of equitable relief to complainant or the moving party with enforcement of defendant's opposing equities, though those equities are barred by limitation to such an extent that they may not be enforced by an original suit or proceeding by the latter.

3. **Bankruptcy** ⊂⇒159—Voidable preference is valid until avoided.

When the endeavor of a creditor to collect or obtain security for his debt results in a voidable preference, because the debtor becomes bankrupt within four months, that preference is not void, but voidable only, and is valid until avoided.

4. **Bankruptcy** ⊂⇒311(6)—On setting aside voidable preference in proceedings begun after expiration of time for filing claims, court may permit creditor to file claim as unsecured (Bankruptcy Act [11 USCA § 93]).

When a voidable preference is not challenged until after expiration of the time fixed by Bankruptcy Act, § 57n (11 USCA § 93) for filing claims, plenary jurisdiction exists and the duty is imposed on the court or referee before whom the preference is brought in question to determine whether, in case it is found voidable,

the preferred creditor ought, on equitable principles, to be allowed to prove his claim as an unsecured creditor.

**5. Bankruptcy ⚖⇒342—Trustee and creditors held estopped to contest allowance of claim after one year, as permitted by order made at trustee's instance.**

Trustee, who applied for and obtained order of referee avoiding a preference after expiration of time for filing claims, and retains the property secured by such order, which provided that the creditor from whom the preference was taken should file his claim as unsecured, and also creditors whom the trustee represented, *held* estopped to contest allowance of such claim.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

In the matter of James G. Eggen, bankrupt. John Larson and others appeal from order permitting the First State Bank of Vienna, S. D., to file unsecured claim after expiration of time for filing claims fixed by statute. Affirmed.

James E. Mather, of Washington, D. C., and Walter Stover, of Watertown, S. D., for appellants.

Arthur H. Hasche and Andy E. Foley, both of Watertown, S. D., for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. On November 21, 1923, James G. Eggen was adjudicated a bankrupt on his voluntary petition. Within four months before he filed his petition in bankruptcy he owed the First State Bank of Vienna, S. D., $22,488.60, evidenced by his promissory notes, upon which a suit was pending against him by the bank, and he settled the litigation concerning that debt on October 1, 1923, and conveyed to the bank in payment thereof a large amount of his real estate. Thenceforth the State Bank of Vienna was in charge of the superintendent of banks of the state of South Dakota and other officers of that state, who conducted its affairs and managed its business, and their acts were in legal effect the acts or failures to act of the bank, and will be so called.

On February 26, 1926, the bank filed its verified claim as an unsecured creditor of Mr. Eggen for the $22,488.60 originally evidenced by his promissory notes. To the filing and allowance of this claim John Larson and Melham Bros. Lumber Company, two of his general creditors, whose claims had been proved and allowed, objected on the ground that the claim of the bank to file its claim as an unsecured creditor, and to share as such in the proceeds of the property of the bankrupt, was barred by limitation by reason of section 57n of the Bankruptcy Act of 1898 (11 USCA § 93), because Eggen was adjudicated a bankrupt on November 21, 1923, and that section limited the time for such filing to one year after the adjudication. The referee overruled the objections of the two objecting creditors on May 19, 1926, and allowed and ordered the bank's claim to be paid as that of the claim of the bank as an unsecured creditor. The objecting creditors prayed the court below for a review of this order and decree. The District Court granted the review, but affirmed the allowance of the claim, and its payment as an unsecured claim, and the objecting creditors appealed to this court.

The question they present is: Was the bank estopped from obtaining the allowance and payment of its claim as an unsecured creditor by the fact that it did not file its formal proof of that claim until February 26, 1926, two years and two months after the adjudication in bankruptcy? But the actual, the decisive, question in this case is: Were not the objecting creditors and their representative, the trustee in bankruptcy, estopped by their inaction and action in the time between the adjudication in November, 1923, and their filing on or about February 26, 1926, of their objections to the proof and allowance of the claim of the bank as a general creditor?

Eggen, within four months before he filed his petition in bankruptcy, settled his pending litigation in the state courts of South Dakota over his indebtedness of $22,488.60 by conveying and delivering possession of a large amount of his valuable real property to the bank in payment of or as security for the payment of that debt. The record contains no proof or evidence that the trustee in bankruptcy, who represented all the creditors, including the two objecting creditors here, gave any notice to the bank, or made any claim to the bank or others, that any of them claimed that the settlement of the litigation between the bank and Eggen constituted a voidable preference until many months after the year subsequent to the adjudication prescribed by section 57n as a limitation of the time for the bank to file its claim as an unsecured creditor. About September, 1925, for the first time the trustee in bankruptcy demanded of the bank $1,100, which at some time in 1925 it had collected in payment of the rent for the year 1924 on

some of the real estate which it had received from Eggen in settlement of their litigation. The bank refused to pay over this sum. The trustee applied to the referee in bankruptcy for an order that the bank pay this money over to the trustee, on the ground that the settlement of the litigation constituted a voidable preference. The bank opposed this application, there was evidently a full hearing and careful consideration of the issue presented, and then an adjudication by the referee of the issues presented, for his order and decree, made and recorded on October 23, 1925, was that Eggen owed the bank $22,488.60 for which proofs of claim had not been filed, that the $1,100 in controversy was derived by the bank from the rent of the property which Eggen conveyed to the bank in settlement of that debt, that the bank should pay over to the trustee this $1,100, and that the said claims of the First State Bank of Vienna in the sum of $22,488.60 "be filed and allowed as general claims against the said estate, and be allowed to participate in any dividends that may be declared." This order and decree proved to be the final order and decree adjudicating the rights of the trustee and the creditors and the bank in this litigation. None of the parties to the litigation sought, by petition for review or appeal or other proceeding, to reverse or modify it.

[1] A court of bankruptcy is a court of equity, and its judicial officers, its judge and its referee in bankruptcy, in deciding and adjudging the rights and duties of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence. This order and decree remained unchanged by any direct proceeding, and estopped these objecting creditors from reversing or modifying it by their subsequent objections to the formal proof of the amount owing the bank by the bankrupt.

The trustee was the legal representative of these objecting creditors and also of the other unsecured creditors in this proceeding instituted by him in their behalf against the bank to prove this voidable preference, and all the parties to that order and decree were bound by its terms. These objecting creditors, whom he represented in his prosecution of the claim of the creditors that the settlement of October 1, 1923, was a voidable preference. were estopped equally with the trustee, their representative, from subsequently questioning the terms of that decree. Pursuant to that order and decree the trustee obtained and still retains the $1,100, which that decree required the bank to pay over to the trustee, and he and these objecting creditors are equally estopped by accepting the benefits of that decree from avoiding the burdens it cast upon them.

[2] Even if the bank had been barred by the limitation of the time for filing its claim as an unsecured creditor by section 57n to one year, the referee had plenary jurisdiction, and it was his duty as a chancellor to make his order and decree of October 23, 1925. The bank did not commence the proceeding which resulted in that order. It was instituted by the trustee as the representative of the general creditors. Established principles and rules of practice in equity are that he who seeks equity may be required to do equity, and that a chancellor or a court of equity may condition the grant of equitable relief to the complainant or the moving party with the enforcement of a defendant's opposing equities, although those equities are barred by limitation to such an extent that they may not be enforced by an original suit or proceeding by the latter. Farmers' Loan & Trust Co. v. Denver, L. & G. Co. (C. C. A.) 126 F. 46, 51; Burnes v. Burnes (C. C. A.) 137 F. 781, 791; Lynch v. Burt (C. C. A.) 132 F. 417, 432; Union Central Life Ins. Co. v. Drake (C. C. A.) 214 F. 536, 548.

[3, 4] When the endeavor of a creditor to collect or obtain securities for the payment of his debt from his debtor results in a voidable preference, because a petition for his debtor's adjudication in bankruptcy is filed within four months after the payment is made or the security given, that preference is not void; it is voidable only; it is valid until avoided, not void until validated, and until it is assailed or avoided innocent parties may lawfully act on the presumption that it is valid; and when a voidable preference is not challenged, or the litigation concerning it is not commenced, until after the expiration of the time fixed in section 57n of the Bankruptcy Act of 1898 for the filing of the claim of the preferred creditor, plenary jurisdiction is conferred, and the duty is imposed upon the federal court or the referee in bankruptcy, when the voidable preference is brought in question, to hear, consider, and decide whether, in case the alleged preference is found to be voidable, the preferred creditor ought on equitable principles to be allowed to prove his claim as an unsecured creditor and to share as such in the proceeds of the estate in bankruptcy. In re Roeber (C. C. A.) 127 F. 122; In re Salvator Brewing Co. (D. C.) 188 F. 522, 524, affirmed (C. C. A.) 193 F. 989; Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 S. Ct. 443, 49 L. Ed.

790; Page v. Rogers, 211 U. S. 575, 29 S. Ct. 159, 53 L. Ed. 332; Buckingham v. Estes (C. C. A.) 128 F. 584.

[5] The order and decree of October 23, 1925, conclusively estopped these objecting creditors from avoiding, reversing, or modifying it by subsequent objections, filed more than three months after its rendition, to the bank's filing and proving its unsecured claim as a general creditor, because that order and decree adjudged the validity of the bank's unsecured claim, the amount of that claim, and the bank's right to share in the proceeds of the bankrupt's estate without further proof, because the trustee was estopped by that decree and by his acceptance of the $1,100 under it from avoiding or modifying it, and these objecting creditors, represented as they were by him, were equally estopped. And because the trustee was the representative of all the creditors in this litigation, and he had prosecuted that litigation to the final decree, these two objecting creditors had no such standing in equity or in bankruptcy as rendered it possible for them successfully to object to the claim of the bank as an unsecured creditor, and thereby destroy the effect of the final decree lawfully secured in this litigation. In re Lewensohn (C. C. A.) 121 F. 538; In re Mexico Hardware Co. (D. C.) 197 F. 650.

Let the order and decree of the court below dated January 14, 1927, dismissing the petition for review of John Larson and Melham Bros. Lumber Company, and allowing the First State Bank of Vienna to participate in any dividends declared in the administration of the estate of the bankrupt as an unsecured creditor, be affirmed.